Filed 8/21/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| OTO, L.L.C.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>KEN KHO,<br><br>        Defendant and Respondent;<br><br>JULIE A. SU, as Labor Commissioner, etc.,<br><br>        Intervener and Appellant. | A147564<br><br>(Alameda County<br>Super. Ct. No. RG15781961) |

Ken Kho filed a claim for unpaid wages with the California Labor Commissioner (commissioner) against his former employer, OTO, L.L.C., doing business as One Toyota of Oakland (hereafter One Toyota). After settlement discussions failed, One Toyota filed a petition to compel arbitration. Under the arbitration agreement, which One Toyota required Kho to execute without explanation during his employment, the wage claim would be subject to binding arbitration conducted by a retired superior court judge. Because the intended procedure incorporated many of the provisions of the Code of Civil Procedure and the Evidence Code, the anticipated arbitration proceeding would resemble ordinary civil litigation.

The trial court denied the petition to compel. Under *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic II*), an arbitration agreement that waives the various advantageous provisions of the Labor Code governing the litigation of a wage claim is substantively unconscionable if it fails to provide the employee with an affordable and accessible alternative forum. The trial court concluded that the alternative

anticipated by One Toyota's arbitration agreement failed this standard because it effectively required Kho to retain counsel and did not expressly provide for him to recover his attorney fees if he prevailed. We reverse, concluding the arbitration proceeding satisfies the *Sonic II* requirements of affordability and accessibility.

## I. BACKGROUND

Kho worked as an auto mechanic for One Toyota from January 2010 through April 2014, when his employment was terminated. Several months later, in October 2014, Kho filed a wage claim with the commissioner.

In November 2014, Kho and One Toyota participated in an unsuccessful settlement conference, mediated by a deputy labor commissioner. The parties continued settlement discussions for the following month, until, in mid-December, One Toyota requested that the commissioner's office forward a proposed settlement agreement to Kho. After Kho "decided not to accept" the offer, he requested a so-called "Berman hearing" on his claim.[1]

On January 30, 2015, the commissioner notified One Toyota of Kho's request, and in March the hearing was scheduled for the following August. In July, Kho requested the issuance of a subpoena for records from One Toyota in preparation for the hearing. The subpoena was issued, requiring One Toyota to bring the requested documents to the hearing.

On the morning of the Berman hearing, a Monday, One Toyota's attorney faxed a letter to the commissioner's office, requesting that the hearing be taken off calendar because One Toyota had filed a petition to compel arbitration and stay the administrative proceedings on the prior Friday.[2] By return fax, the commissioner's office informed

---

[1] Apparently Kho's refusal of the offer was not communicated to One Toyota by the commissioner until March 2015, at which time One Toyota told the commissioner it would continue to try to settle the matter. By that time, of course, One Toyota had received notice of the scheduled Berman hearing.

[2] The parties dispute whether this was the first time One Toyota raised the issue of arbitration. In a declaration filed later, One Toyota's attorney claimed to have informed Kho at the time of the settlement conference that it intended to seek arbitration of his

2

counsel that the hearing would proceed as scheduled. At the appointed time, counsel for One Toyota appeared, served Kho with the petition to compel and stay proceedings, and left. Undeterred, the hearing officer proceeded with the hearing in One Toyota's absence and later issued an extensive "Order, Decision, or Award" (ODA) finding Kho entitled to $102,912 in unpaid wages and $55,634 in liquidated damages, interest, and penalties.

One Toyota thereafter sought de novo review of the ODA in the trial court pursuant to Labor Code section 98.2, posting the requisite bond to secure payment of the award. (*Id.*, subd. (b).) At the same time, One Toyota supplemented its petition to compel arbitration with the filing of a motion to vacate the ODA. By stipulation, the commissioner was allowed to intervene in the trial court proceedings.

One Toyota's petition to compel arbitration was premised on a "Comprehensive Agreement—Employment At-Will and Arbitration" (Agreement), executed by Kho on February 22, 2013, three years into his employment. The substance of the Agreement appears to be quite similar to the arbitration agreement addressed in the *Sonic* decisions. (See *Sonic II*, *supra*, 57 Cal.4th at pp. 1125–1126, 1146; *Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659, 680 (*Sonic I*).) Notwithstanding its designation as a "comprehensive" employment contract, the one and one-quarter page contract is merely an arbitration clause grafted onto an acknowledgment of at-will employment. The clause, written in a tiny font size, consists of a dense, single-spaced paragraph that occupies nearly the entirety of the first page.[3] The terms of the clause are broad, requiring arbitration of "any claim, dispute, and/or controversy" by either party against the other. Although arbitration under the Agreement purports to be subject to the procedures of the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.), the clause requires any arbitration to be conducted by a retired California superior court judge and in

---

claims. Both Kho and the deputy commissioner who conducted the hearing denied that the issue of arbitration was raised, and One Toyota acknowledged there is no written record reflecting this interaction. The trial court did not resolve this issue of fact.

[3] The clause is written in seven-point font size. For purposes of demonstration, this sentence is written in seven-point font. A copy of the Agreement is attached as an appendix to this decision.

3

conformance with California laws governing pleading and evidence. Accordingly, the clause permits the full extent of discovery authorized by the CAA, authorizes demurrers and motions for summary judgment, among all other California pleadings, and requires the arbitration hearing to be conducted pursuant to the Evidence Code. It anticipates, in short, ordinary civil litigation, followed by the equivalent of a civil bench trial, except that one or both parties must finance the judge and facilities. With respect to the allocation of the costs of arbitration, the clause states: "If [Code of Civil Procedure section] 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of [Code of Civil Procedure section] 1284.2."[4]

In opposing the petition to compel, Kho explained the circumstances of his execution of the Agreement: "After working for One Toyota of Oakland for approximately 3 years, Alba, who was a 'porter' employed with [the human resources department of] One Toyota of Oakland, brought . . . paperwork for me to sign. This happened approximately in February 2013. [¶] . . . I remember working at my station and Alba asked me to sign several additional documents in February 2013. I was not asked to come into the human resources office to review the documents and I was required to sign and return them immediately to Alba, who was waiting in my work station for me to finish signing them. It took about 3–4 minutes for me to sign these documents. After I signed them, I gave the documents back to Alba and I was not given an opportunity to read what those documents were. [¶] . . . I was not provided with a copy of the documents signed on [*sic*] February 2013. No one from One Toyota of Oakland read to [*sic*] the contents of the documents to me nor did they explain to me that I was signing an arbitration agreement and waiving any of my rights. [¶] . . . [A]t no point during my

---

[4] Code of Civil Procedure section 1284.2 states: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit."

4

employment with One Toyota of Oakland did I receive a copy of the arbitration agreement.  My first language is Chinese and a copy of this agreement was not provided in my native language."

One Toyota did not dispute Kho's account.

The trial court denied the petition to compel.  In an extensive written decision, the court found "that there was a high level of procedural unconscionability connected with the execution of the arbitration agreement in this case."  It noted Kho was not given time to review the Agreement, was given no explanation of it, and was not given a copy afterward, which the court found "consistent with the conclusion that the arbitration provision was imposed on [Kho] under circumstances that created oppression or surprise due to unequal bargaining power."  The court also found the Agreement substantively unconscionable under *Sonic II* because it deprived Kho of the advantages of the commissioner's procedures, which provide for a relatively quick, inexpensive method for resolving wage claims that is designed to accommodate pro se claimants, like Kho, without providing an "accessible and affordable" alternative.  As the court noted, the Agreement anticipates close to a full trial, which would necessitate the hiring of counsel, but it does not provide for the recovery of attorney fees to incentivize counsel.  Because the court denied the petition to compel, it declined to address Kho's argument that One Toyota's last-minute assertion of its right to arbitrate waived that right.  Although the court denied the petition to compel, it did grant One Toyota's motion to vacate the ODA, concluding that the agency abused its discretion in proceeding with the hearing after having been informed that Kho had executed an agreement to arbitrate that could moot the proceeding.

One Toyota has appealed the denial of its petition to compel arbitration, while the commissioner, as intervener, has cross-appealed the order vacating the ODA.  Kho has not appeared personally or by counsel, but the commissioner has filed a respondent's brief asserting arguments on his behalf.

5

## II.  DISCUSSION

### A. *Governing Law*

#### 1. *Unconscionability*

" 'A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' [Citation.]  A party seeking to compel arbitration of a dispute 'bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability.' " (*Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 8.)  The Supreme Court summarized the doctrine of unconscionability in the context of arbitration agreements in *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899 (*Sanchez*):

" ' "One common formulation of unconscionability is that it refers to ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' [Citation.]  As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." ' [Citation.]

" ' "The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.]  But they need not be present in the same degree.  "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." [Citations.]  In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]  Courts may find a contract as a whole 'or any clause of the contract' to be unconscionable.  [Citation.]

6

"As we stated in *Sonic II*: 'The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party" [citation]. These include "terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction." ' " (*Sanchez, supra*, 61 Cal.4th at pp. 910–911.)

When, as here, the evidence is not in dispute, we review de novo a trial court's decision on a petition to compel arbitration. (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 683.)

### 2. *Litigation of Wage Claims*

Claims for unpaid wages filed by California workers are investigated by California's Division of Labor Standards Enforcement, headed by the commissioner. (*Performance Team Freight Systems, Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, 1237 (*Aleman*).) The handling of such claims was explained in *Sonic I, supra*, 51 Cal.4th 659, which held that the right to the commissioner's procedures cannot be waived:[5]

" 'If an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek *judicial* relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. [Citations.] Or the employee may

---

[5] This holding was overruled by *Sonic II, supra*, 57 Cal.4th 1109.

7

seek *administrative* relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in [Labor Code] sections 98 to 98.8. The latter option was added by legislation enacted in 1976 (Stats. 1976, ch. 1190, §§ 4–11, pp. 5368–5371) and is commonly known as the "Berman" hearing procedure after the name of its sponsor.' [Citations.]

"Once an employee files a complaint with the Labor Commissioner for nonpayment of wages, [Labor Code] section 98, subdivision (a) ' "provides for three alternatives: the commissioner may either accept the matter and conduct an administrative hearing [citation], prosecute a civil action for the collection of wages and other money payable to employees arising out of an employment relationship [citation], or take no further action on the complaint. [Citation.]" ' [Citation.] . . . [P]rior to holding a Berman hearing or pursuing a civil action, the Labor Commissioner's staff may attempt to settle claims either informally or through a conference between the parties. [Citation.]

"A Berman hearing is conducted by a deputy commissioner, who has the authority to issue subpoenas. [Citations.] 'The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims. In brief, in a Berman proceeding the commissioner may hold a hearing on the wage claim; the pleadings are limited to a complaint and an answer; the answer may set forth the evidence that the defendant intends to rely on, and there is no discovery process; if the defendant fails to appear or answer no default is taken and the commissioner proceeds to decide the claim, but may grant a new hearing on request. [Citation.] The commissioner must decide the claim within 15 days after the hearing. [Citation.]' [Citation.] The hearings are not governed by the technical rules of evidence, and any relevant evidence is admitted 'if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.' [Citation.] The hearing officer is authorized to assist the parties in cross-examining witnesses and to explain issues and terms not understood by the parties. [Citation.] The parties have a right to have a translator present. [Citations.]

"Once judgment is entered in the Berman hearing, enforcement of the judgment is to be a court priority. [Citation.] The Labor Commissioner is charged with the

8

responsibility of enforcing the judgment and 'shall make every reasonable effort to ensure that judgments are satisfied, including taking all appropriate legal action and requiring the employer to deposit a bond as provided in [Labor Code] Section 240.' [Citation.]

"Within 10 days after notice of the decision any party may appeal to the appropriate court, where the claim will be heard de novo; if no appeal is taken, the commissioner's decision will be deemed a judgment, final immediately, and enforceable as a judgment in a civil action. [Citation.] If an employer appeals the Labor Commissioner's award, '[a]s a condition to filing an appeal pursuant to this section, an employer shall first post an undertaking with the reviewing court in the amount of the order, decision, or award. The undertaking shall consist of an appeal bond issued by a licensed surety or a cash deposit with the court in the amount of the order, decision, or award.' [Citation.] The purpose of this requirement is to discourage employers from filing frivolous appeals and from hiding assets in order to avoid enforcement of the judgment. [Citation.]

"Under [Labor Code] section 98.2, subdivision (c), 'If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero.' This provision thereby establishes a one-way fee-shifting scheme, whereby unsuccessful appellants pay attorney fees while successful appellants may not obtain such fees. [Citation.] This is in contrast to [Labor Code] section 218.5, which provides that in civil actions for nonpayment of wages initiated in the superior court, the 'prevailing party' may obtain attorney fees.[6]

---

[6] Following the issuance of *Sonic I*, this contrast between Berman proceedings and Labor Code section 281.5 was substantially mitigated when that section was amended to provide that a prevailing employee in a wage dispute can recover attorney fees, while a prevailing employer can recover such fees only if the employee brought the action in bad faith. (Stats. 2013, ch. 142, § 1.)

9

"Furthermore, the Labor Commissioner 'may' upon request represent a claimant 'financially unable to afford counsel' in the de novo proceeding and 'shall' represent the claimant if he or she is attempting to uphold the Labor Commissioner's award and is not objecting to the Commissioner's final order. [Citation.] Such claimants represented by the Labor Commissioner may still collect attorney fees pursuant to [Labor Code] section 98.2, although such claimants have not, strictly speaking, incurred attorneys fees, because construction of the statute in this manner is consistent with the statute's goals of discouraging unmeritorious appeals of wage claims. [Citation.]

"In sum, when employees have a wage dispute with an employer, they have a right to seek resolution of that dispute through the Labor Commissioner, either through the commissioner's settlement efforts, through an informal Berman hearing, or through the commissioner's direct prosecution of the action. When employees prevail at a Berman hearing, they will enjoy the following benefits: (1) the award will be enforceable if not appealed; (2) the Labor Commissioner is statutorily mandated to expend best efforts in enforcing the award, which is also established as a court priority; (3) if the employer appeals, it is required to post a bond equal to the amount of the award so as to protect against frivolous appeals and evading the judgment; (4) a one-way attorney fee provision will ensure that fees will be imposed on employers who unsuccessfully appeal but not on employees who unsuccessfully defend their Berman hearing award, or on employees who appeal and are awarded an amount greater than zero in the superior court; (5) the Labor Commissioner is statutorily mandated to represent in an employer's appeal claimants unable to afford an attorney if the claimant does not contest the Labor Commissioner's award." (*Sonic I*, *supra*, 51 Cal.4th at pp. 671–674, fn. omitted.)

**3.** ***Substantive Unconscionability in the Context of Wage Claim Arbitration***

In *Sonic I*, the Supreme Court held an arbitration clause that has the effect of waiving an employee's statutory right to Berman procedures to be substantively unconscionable. (*Sonic I*, *supra*, 51 Cal.4th at p. 686.) The circumstances of *Sonic I* were virtually indistinguishable from those presented here. The respondent was an auto dealership employee who had filed a wage claim with the commissioner. The arbitration

10

clause in his employment contract appears to have been very similar to that in the Agreement. (*Id.* at pp. 669, 680; see *Sonic II*, *supra*, 57 Cal.4th at p. 1146.)

In *Sonic II*, the Supreme Court acknowledged that *Sonic I*'s holding of per se unconscionability was inconsistent with the United States Supreme Court's intervening decision in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333. (*Sonic II*, *supra*, 57 Cal.4th at p. 1141.) At the same time, *Sonic II* recognized that unconscionability remained a valid defense to a petition to compel arbitration of a wage claim, at least under the correct circumstances. (*Id.* at p. 1142.) With respect to an adhesive contract, "the unconscionability doctrine is concerned . . . with terms that are 'unreasonably favorable to the more powerful party' [citation]." (*Id.* at p. 1145.) Accordingly, the court concluded, "the waivability of a Berman hearing in favor of arbitration does not end the unconscionability inquiry" and remanded the matter to the trial court to conduct a "fact-specific inquiry" regarding "the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided." (*Id.* at p. 1146.)

In discussing the nature of this inquiry, the court explained, "The Berman statutes include various features designed to lower the costs and risks for employees in pursuing wage claims . . . . Waiver of these protections does not necessarily render an arbitration agreement unenforceable, nor does it render an arbitration agreement unconscionable per se. But waiver of these protections in the context of an agreement that does not provide an employee with an accessible and affordable arbitral forum for resolving wage disputes may support a finding of unconscionability. As with any contract, the unconscionability inquiry requires a court to examine the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided." (*Sonic II*, *supra*, 57 Cal.4th at p. 1146.) While *Sonic II* later reiterated that waiver of Berman hearing protections alone would not support a finding of unconscionability (*id.* at p. 1147), it provided no further guidance regarding the type of "affordable and accessible" procedure that would stand as a suitable substitute. Rather, the court merely repeated that "in the context of a standard contract of adhesion setting

11

forth conditions of employment, the unconscionability inquiry focuses on whether the arbitral scheme imposes costs and risks on a wage claimant that make the resolution of the wage dispute inaccessible and unaffordable, and thereby 'effectively blocks every forum for the redress of disputes, including arbitration itself.' " (*Id.* at p. 1148.)

Although *Sonic II* remanded the matter for an inquiry into both the procedural and substantive unconscionability of the arbitration clause in question, we assume that the dual requirements of affordability and accessibility are concerned only with substantive unconscionability. Both of these features are determined by the substantive terms of the arbitration agreement, not by the manner of its execution or its form. The requirements of affordability and accessibility therefore set the minimum standard that an arbitration clause requiring waiver of Berman procedures must meet to avoid a finding of substantive unconscionability as a result of that waiver.

**B.** *Unconscionability of the Agreement*

**1.** *Procedural Unconscionability*

A contract is adhesive, and therefore procedurally unconscionable to a degree, if "written on a preprinted form and offered on a take-it-or-leave-it basis." (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1245; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 243 [" 'It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability.' "].) Given the circumstances of Kho's execution of the Agreement, there is no question that it was a contract of adhesion. The issue here is whether, as the trial court found, the circumstances of its formation created a greater degree of procedural unconscionability, requiring " 'closer scrutiny' of the agreement's substantive fairness." (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1268.) We conclude they did.

"Procedural unconscionability pertains to the making of the agreement and requires oppression or surprise." (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 285.) "The 'oppression' component of procedural unconscionability 'arises from an inequality of bargaining power of the parties to the contract and an

absence of real negotiation or a meaningful choice on the part of the weaker party.' [Citation.] 'Surprise is defined as " 'the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.' " ' " (*Lennar Homes of California, Inc. v. Stephens* (2014) 232 Cal.App.4th 673, 688.) "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." (*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.* (2015) 232 Cal.App.4th 1332, 1348, fn. omitted.)

The circumstances of Kho's execution of the Agreement demonstrated a high degree of oppression. As noted, the Agreement was not negotiated but presented on a take-it-or-leave-it basis. Further, the Agreement was submitted to Kho for signature at a time when One Toyota was already his employer; in the absence of any explanation, Kho could have inferred that execution of the document was expected of him as a condition of his employment. To avoid this implication, One Toyota could have excused Kho from his work station, submitted the Agreement to him with an explanation of both its purpose and meaning, and explained its significance, if any, for his further employment. It chose to do none of those things. Instead, the document was presented to him at his work station, where he was under pressure to perform his job. Not only did One Toyota provide no explanation for its demand for his signature, it selected a low level employee, a "porter," to present the Agreement, creating the impression that no request for an explanation was expected and any such request would be unavailing. These circumstances were highly coercive and appear intended to thwart, rather than promote, voluntary and informed consent.

The issue of surprise is less clear-cut, but it is by no means absent. The Agreement seems intended as a parody of the classic adhesion contract. Written in a

13

single block, without paragraphs to delineate different topics, the arbitration clause is visually impenetrable.  Because the entire Agreement occupies less than two pages, there was no practical need for One Toyota to choose a small typeface.  Yet the font chosen is so small as to challenge the limits of legibility.  Further, the language is legalistic, and the text is complex.  The second sentence of the arbitration clause manages to occupy 11 lines of text, notwithstanding the tiny typeface.  Some of the language, such as the reference to Code of Civil Procedure section 1284.2, requires a specialist's legal training to understand.  It cannot be said that One Toyota was attempting to hide the ball by burying the arbitration clause in an otherwise prolix agreement, since the Agreement consists almost entirely of the arbitration clause.  Yet the Agreement is drafted and composed in a manner, again, to thwart rather than promote understanding.[7]  For these reasons, we conclude that the degree of procedural unconscionability was extraordinarily high.

## 2. *Substantive Unconscionability*

Although we find a high degree of procedural unconscionability, we conclude the Agreement is not substantively unconscionable under the standard of *Sonic II*, which requires enforcement of a Berman hearing waiver if the arbitration clause provides an "accessible and affordable arbitral forum."[8]  (*Sonic II*, *supra*, 57 Cal.4th at p. 1146.)

The commissioner first argues that the Agreement is substantively unconscionable under general arbitration law because it is unduly harsh or one-sided.  (E.g., *Sanchez*, *supra*, 61 Cal.4th at p. 911.)  In the abstract, however, the arbitration provisions of the

_____

[7] Because the record contains no information about Kho's English facility, we are less concerned with the failure to present him with a version of the Agreement written in Chinese, his native language.  Many American immigrants who were born speaking another language are fluent in written English.

[8] This requirement applies only to an arbitration clause contained in a contract of adhesion.  While we find it unnecessary to review the procedural unconscionability of Kho's execution of the Agreement, we have no doubt that the Agreement was a contract of adhesion, given the circumstances of its execution.  (See *Sonic II, supra*, 57 Cal.4th at p. 1133 [a contract of adhesion is drafted by a party of superior bargaining strength and gives to the other party only the opportunity to adhere to the contract or reject it].)

Agreement are neither harsh nor one-sided. The arbitration clause does not, for example, require arbitration of claims most likely to be filed by an employee while excluding those of an employer. (E.g., *Carbajal v. CWPSC, Inc.*, *supra*, 245 Cal.App.4th at p. 248.) Nor does it contain any other substantive features that appear, on their face, designed to benefit the employer. (See *id.* at pp. 250–251 [arbitration clause required each party to bear own fees, effectively waiving various employee fee recovery statutes].) The Agreement anticipates a proceeding very much like ordinary civil litigation, with no special procedural features that would tend to favor One Toyota—any more, at least, than the complexity and expense of civil litigation naturally tends to favor a party with greater sophistication and financial resources.

Rather, the Agreement can be argued "harsh or one-sided" only in comparison to the various features of the Labor Code that seek to level the playing field for wage claimants—features that, as the Supreme Court characterized them, are "designed to lower the costs and risks for employees in pursuing wage claims, including procedural informality, assistance of a translator, use of an expert adjudicator who is authorized to help the parties by questioning witnesses and explaining issues and terms, and provisions on fee shifting, mandatory undertaking, and assistance of the Labor Commissioner as counsel to help employees defend and enforce any award on appeal." (*Sonic II*, *supra*, 57 Cal.4th at p. 1146.) The premise of *Sonic II*, however, was that these various features lawfully could be waived by an arbitration agreement governing wage claims, and the court presumably factored the permissibility of such a waiver into its unconscionability standard. As the court held, "Waiver of these protections does not necessarily render an arbitration agreement unenforceable, nor does it render an arbitration agreement unconscionable per se. But waiver of these protections in the context of an agreement that does not provide an employee with an accessible and affordable arbitral forum for resolving wage disputes may support a finding of unconscionability." (*Ibid.*) In other words, waiver of the various employee-friendly wage claim provisions of the Labor Code does not make an arbitration agreement unconscionable so long as the resulting

15

arbitration procedure is "affordable and accessible." We proceed on that assumption in considering the Agreement.

As to the first factor, affordability, One Toyota acknowledges that it must pay all costs of arbitration under the Agreement. As noted above, the Agreement provides that the parties will split the costs of arbitration, as required by Code of Civil Procedure section 1284.2, unless "statutory provisions or controlling case law" provide otherwise. With respect to wage claims, One Toyota concedes that the Supreme Court's decision in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*) requires an employer to pay the costs of arbitration, notwithstanding section 1284.2. *Armendariz* held that certain statutory rights cannot be waived and that arbitration agreements encompassing such rights "must be subject to particular scrutiny."[9] (*Armendariz*, at pp. 100, 101.) Given the importance of these rights, *Armendariz* held, an agreement requiring their arbitration must be interpreted to require the employer to pay any costs of arbitration "that the employee would not be required to bear if he or she were free to bring the action in court." (*Id.* at pp. 110–111.) Accordingly, the Agreement's silence on arbitration costs must be interpreted under *Armendariz* to require One Toyota to pay the costs of arbitration. Because Kho will not be required to pay any costs of arbitration not required by the civil courts, the *Sonic II* requirement of affordability is presumably satisfied here.

We find no merit in the commissioner's argument that the Agreement is unconscionable because it does not expressly inform Kho that One Toyota must pay the arbitral costs of a wage claim. The Agreement was intended to deal with a wide variety of legal claims potentially asserted by an employee against his or her employer, or vice versa. It is therefore not surprising that it does not contain any provision specifically addressing the allocation of costs for wage claim arbitration. Although the Agreement does not discuss the law applicable to cost-sharing with respect to any specific claim, it

---

[9] Although *Armendariz* concerned the rights established by the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), One Toyota does not dispute that statutory wage rights are similarly unwaivable.

16

does recognize that there are statutory and common law exceptions to the general rule of cost-sharing established by Code of Civil Procedure section 1284.2, implicitly acknowledging the possibility, with respect to some claims, that One Toyota will be required to pay the costs. The arbitration clause is not unconscionable merely because it does not attempt to characterize those claims.

The trial court held, and the commissioner argues, that the arbitration envisioned by the Agreement is not affordable because it will require Kho to retain counsel, while the Labor Code permits a wage claimant to be represented by the commissioner in a de novo proceeding following the Berman hearing and provides for recovery of attorney fees to a prevailing wage claimant.[10] (Lab. Code, §§ 98.2, subd. (c), 98.4.) We do not agree that the absence of representation by the commissioner makes arbitration unaffordable for purposes of *Sonic II*. First, legal representation for an employee is the most obvious expense arising in connection with wage claim arbitration. If the *Sonic II* court believed an arbitration agreement must provide for free counsel to avoid unconscionability, it easily could have said so, just as *Armendariz* expressly required the payment of other arbitration costs. *Sonic II* did not articulate this requirement, and its silence on the point is suggestive. Second, it must be understood that a wage claimant has no absolute right to counsel in the de novo portion of wage claim litigation. Representation lies in the discretion of the commissioner, unless the claimant has already prevailed at the Berman hearing and does not challenge that award. The Agreement therefore does not necessarily require an expense beyond that necessary under Labor Code procedures. Third, the claimant is not required to retain counsel for the arbitration but may proceed in pro. per. While this is certainly not the best approach, it is the option facing every litigant in ordinary civil litigation. The type of proceeding envisioned by the Agreement, while it is

---

[10] Labor Code section 98.4 provides: "The Labor Commissioner may, upon the request of a claimant financially unable to afford counsel, represent such claimant in the de novo proceedings provided for in Section 98.2. In the event that such claimant is attempting to uphold the amount awarded by the Labor Commissioner and is not objecting to any part of the Labor Commissioner's final order, the Labor Commissioner shall represent the claimant."

potentially more complex than a typical arbitration hearing, is no more complex than the civil litigation required for a de novo hearing under the Labor Code. We conclude that the absence of free representation does not make a wage claim arbitration unaffordable.

Nor does the lack of an express employee-favorable attorney fees provision, similar to Labor Code section 98.2, subdivision (c), cause the Agreement to be unconscionable, since the Agreement requires the application of another, similarly favorable provision of the Labor Code. Although the Agreement is silent as to the award of attorney fees, it requires the arbitrator to apply "the law governing the claims and defenses pleaded." Section 98.2 would not apply to an arbitration under the Agreement because it governs only de novo appeals from a Berman hearing. Labor Code section 218.5, however, applies more generally to "any action brought for the nonpayment of wages" and requires an award of reasonable attorney fees to a prevailing employee, while granting fees to a prevailing employer only if the employee's action was brought in bad faith. (*Id.*, subd. (a).) In some circumstances this provision would be more favorable to an employee than section 98.2, since the latter allows an award of attorney fees to an employer whenever an appealing employee fails to recover any wages, regardless of the employee's good faith. As One Toyota concedes, the required application of Labor Code section 218.5 has essentially the same legal effect as section 98.2, subdivision (c).

While the factors affecting "accessibility" are not explored in *Sonic II*, we find nothing in the proceeding required by the Agreement that would cause it to be inaccessible to an employee. The commissioner argues that the Agreement should be found unconscionable because it replaced the relative simplicity of the Berman hearing with a complex proceeding resembling civil litigation. If the Labor Code required only a Berman hearing to resolve wage claims, the argument might have some force. The result of a Berman hearing, however, is nonbinding. An appeal by either party effectively nullifies the result, in favor of a de novo proceeding in superior court—in other words, in favor of ordinary civil litigation. Because the type of proceeding outlined by the Agreement is similar to civil litigation, it anticipates a proceeding that is no more

18

complex than will often be required to resolve a wage claim under the Berman procedures. Such a proceeding is presumably not inaccessible for purposes of *Sonic II.*

The commissioner contends the proceeding anticipated by the Agreement is inaccessible because the Agreement does not contain a provision specifying the means for initiating an arbitration. While a well-drawn arbitration clause would have specified such means, the failure to designate a manner of commencing arbitration does not render the clause unconscionable. The failure actually introduces flexibility, since an arbitration presumably can be commenced in any reasonable manner. Although in a roundabout way, Kho effectively commenced an arbitration by filing a wage claim with the commissioner, thereby compelling One Toyota either to litigate under the Labor Code or respond with a petition to compel. A variety of other means would undoubtedly be recognized as sufficient for commencement of an arbitration. Nor do we find the proceeding inaccessible because the Agreement does not refer to a particular arbitration sponsor or set of rules. As noted, the Agreement provides that the proceeding will be governed by the pleading rules of the Code of Civil Procedure and by the Evidence Code, as applicable in California courts.

### 3. *Enforcement of the Agreement*

As our discussion likely makes clear, we are disturbed by the manner in which the Agreement was drafted and presented to Kho for signature. Nonetheless, California arbitration law has consistently required both procedural and substantive unconscionability before an arbitration provision will be refused enforcement. (*Sanchez, supra,* 61 Cal.4th at p. 910 [unconscionability requires both procedural and substantive unconscionability]; *Aleman, supra,* 241 Cal.App.4th 1233, 1248 [where no procedural unconscionability, arbitration agreement could not be found unconscionable].) Although a high degree of procedural unconscionability ordinarily imposes " 'closer scrutiny' of the agreement's substantive fairness" (*Farrar v. Direct Commerce, Inc., supra,* 9 Cal.App.5th at p. 1268), *Sonic II* appears to establish affordability and accessibility as a safe harbor when the claim of substantive unconscionability is premised on the waiver of Berman procedures. Given our conclusion that the Agreement is not substantively

19

unconscionable under *Sonic II*, we must reverse the trial court's order denying the petition to compel arbitration.

## C. *Waiver*

Although the commissioner does not contend on appeal that One Toyota waived its right to arbitrate entirely, it does contend that One Toyota's delay in asserting its right to arbitrate waived its right to avoid a Berman hearing.

We discussed the law relating to waiver of arbitral rights through delay in *Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438:

" 'State law, like the [Federal Arbitration Act (9 U.S.C. § 1 et seq.)], reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims. [Citation.] Although a court may deny a petition to compel arbitration on the ground of waiver [citation], waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof.' [Citation.]

" 'Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration. [Citations.] " 'In the past, California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. . . .' " . . .' [Citation.]

" '[W]hether litigation results in prejudice to the party opposing arbitration is critical in waiver determinations.' [Citation.] ' " 'The moving party's mere participation in litigation is not enough [to support a finding of waiver]; the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration.' [Citation.]" [Citations.] [¶] . . . [¶] . . . "[C]ourts will not find prejudice where the party opposing arbitration shows *only* that it incurred court costs and legal expenses." [Citation.]' [Citation.] 'Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect " 'a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution' " and

20

are intended " 'to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' " [Citation.] Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration. [¶] For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence [citation].' " (*Gloster v. Sonic Automotive, Inc.*, *supra*, 226 Cal.App.4th at pp. 447–448.)

In her briefs, the commissioner did not attempt to demonstrate prejudice accruing from One Toyota's delay in asserting its right to arbitrate, and we find none. The first portion of the Berman procedure involves settlement discussions. We would be reluctant to require an employer to forego settlement discussions in order to preserve the right to arbitration, since such discussions seem of potential benefit to both sides of a wage dispute. While it would have been preferable for One Toyota to have asserted its right to arbitration immediately upon the failure of settlement discussions in order to avoid inconvenience to Kho and the commissioner, inconvenience does not equal prejudice.[11] Neither Kho nor the commissioner was required to spend substantial time or funds in preparation for the Berman hearing, which is informal by design. At oral argument, the

---

[11] In finding that One Toyota did not forfeit its right to arbitration by waiting until the 11th hour to file its petition to compel, we do not mean to suggest we condone its conduct. At oral argument, One Toyota insisted it waited until the morning of the hearing to inform Kho and the commissioner of its decision on the chance the matter would settle on the eve of the hearing. Yet the record reveals that One Toyota's last settlement effort occurred months before the hearing, and it made no attempt to settle at the Berman hearing, where its attorney stayed only long enough to serve Kho with papers. While we find no forfeiture in the absence of prejudice, we do find an unacceptable lack of courtesy.

commissioner argued Kho was prejudiced by delay, but we find there was no significant delay.  The Berman hearing proceeded as scheduled.  Although that will now be followed by an arbitration proceeding, One Toyota's assertion of its right to a trial de novo ensured that Kho's wage claim would not be resolved promptly even in the absence of arbitration.  One Toyota's assertion of its right immediately prior to the commencement of the hearing therefore caused no prejudice.  In the absence of prejudice, we cannot find One Toyota to have waived its right to assert the Agreement.

Without discussing the extensive case law governing waiver of the right to arbitrate, the commissioner cites language from *Sonic II* in an attempt to argue that the decision requires a petition to compel arbitration to be filed sufficiently far in advance of a scheduled Berman hearing to allow the petition to be decided prior to the hearing.  It is clear, however, that *Sonic II* was not concerned with waiver and did not purport to render any holding with respect to that issue.  The commissioner's attempt to construe the decision as establishing a deadline for the filing of a petition to compel must therefore be rejected.  (See *People v. Brooks* (2017) 3 Cal.5th 1, 110 ["It is axiomatic that a case is not authority for an issue that was not considered."].)

### D.  *The Commissioner's Cross-appeal*

Given our conclusion that Kho waived his right to pursue the Berman procedures in favor of the arbitration procedure contained in the Agreement, the commissioner's appeal of the order vacating the ODA is moot.  Even if we concluded the trial court erred in vacating the ODA, we could not render effective relief because Kho was not entitled to a Berman hearing in the first place.  (See *McClatchy v. Coblentz, Patch, Duffy & Bass, LLP* (2016) 247 Cal.App.4th 368, 375 [matter is moot when the court cannot grant effective relief].)  We accordingly affirm the trial court's order vacating the ODA.

### III.  DISPOSITION

The trial court's denial of One Toyota's petition to compel arbitration is reversed, and its order vacating the ODA is affirmed.  The matter is remanded to the trial court with directions to enter a new order granting the petition to compel arbitration.  One Toyota may recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

22

_____
Margulies, J.

We concur:

_____
Humes, P.J.

_____
Banke, J.

A147564

CT005

# COMPREHENSIVE AGREEMENT
# EMPLOYMENT AT-WILL AND ARBITRATION

1.  It is hereby agreed by and between ___KEN KHO___ (hereinafter "Associate") and ___One Toyota of Oakland___ (hereinafter "Company") that the employment and compensation of Associate can be terminated by the Company or the Associate at any time, with or without cause and/or with or without notice, at the option of the Company or the Associate.

2.  I also acknowledge that the Company utilizes a system of alternative dispute resolution that involves binding arbitration to resolve all disputes which may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that any claim, dispute, and/or controversy that either party may have against one another (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other applicable local, state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, associates, agents, and parties affiliated with its associate benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, and Employment Development Department claims) shall be submitted to and determined exclusively by binding arbitration. In order to provide for the efficient and timely adjudication of claims, the arbitrator is prohibited from consolidating the claims of others into one proceeding. This means that an arbitrator will hear only my individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group of employees in one proceeding, to the maximum extent permitted by law. Thus, the Company has the right to defeat any attempt by me to file or join other employees in a class, collective or joint action lawsuit or arbitration (collectively "class claims"). Notwithstanding the prohibition herein against "class claims" in arbitration, where my aggregate claims seek a small amount of damages (e.g., relief that would otherwise require or permit me to proceed in a California Small Claims action), and where the arbitrator makes a specific factual finding after an evidentiary hearing that the prohibition against "class claims" would, for my specific claims, become an exemption to the Company from responsibility for its own alleged willful injury to me and that such prohibition against "class claims" violates fundamental notions of fairness to the extent that the arbitrator determines that the prohibition against "class claims" is substantively unconscionable, I will be permitted to bring "class claims" in binding arbitration subject to all the legal requirements for maintaining "class claims." I further understand that I will not be disciplined, discharged, or otherwise retaliated against for exercising my rights under Section 7 of the National Labor Relations Act, including but not limited to challenging the limitation on a class, collective, or joint action. I understand and agree that after I exhaust administrative remedies through the Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission, I must pursue any such claims through this binding arbitration procedure. I acknowledge that the Company's business (repairing automobiles and selling automobiles and parts coming from outside the State) and the nature of my employment in that business affect interstate commerce. I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec 1280 et seq., including section 1283.05 and all the Act's other mandatory and permissive rights to discovery). However in addition to requirements imposed by law, any arbitrator herein shall be a retired California Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court. To the extent applicable in civil actions in California courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure Section 631.8. The arbitrator shall be vested with authority to determine any and all issues pertaining to the dispute/claims raised, any such determinations shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including but not limited to, notions of "just cause") for his/her determinations other than such controlling law. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity. Likewise, all communications during or in connection with the arbitration proceedings are privileged in accordance with Cal. Civil Code Section 47(b). As reasonably required to allow full use and benefit of this agreement's modifications to the Act's procedures, the arbitrator shall extend the times set by the Act for the giving of notices and setting of hearings. Awards shall include the arbitrator's written reasoned opinion. If CCP § 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2. Both the Company and I agree that any arbitration proceeding must move forward under the Federal Arbitration Act (9 U.S.C. §§ 3-4), even though the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration: thus, the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite the provisions of California Code of Civil Procedure § 1281.2(c). The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation any claim that this Agreement is void or voidable. Thus, the Company and Employee voluntarily waive the right to have a court determine the enforceability and/or scope of this Agreement.

3 | P a g e

Appendix, page 1 of 2

24

*I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY.*

3. It is further agreed and understood that any agreement contrary to the foregoing must be entered into, in writing, by the President of the Company. No supervisor or representative of the Company, other than its President, has any authority to enter into any agreement for employment for any specified period of time or make any agreement contrary to the foregoing. Oral representations made before or after you are hired do not alter this Agreement.

4. This is the entire agreement between the Company and the Associate regarding dispute resolution, the length of my employment, and the reasons for termination of employment, and this agreement supersedes any and all prior agreements regarding these issues.

5. Should any term or provision, or portion thereof, be declared void or unenforceable it shall be severed and the remainder of this agreement shall be enforced.

MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS.

Signed at _One Toyota_, California, this 22 day of _Feb_, 20_13_.

Associate's Signature: _Ken Khu_

Print Name: _KEN KHU_

Date: _2/22/13_

4 | Page

Appendix, page 2 of 2

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Evelio Grillo

Counsel:

Fine, Boggs & Perkins, John P. Boggs and Roman Zhuk for Plaintiff and Appellant

Fernando Flores for Intervener and Appellant.

No appearance for Defendant and Respondent.